## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Raleigh Spizman, individually, and Robert Spizman, individually, | Case No. 14-cv-03568 (MJD/TNL) |
| Plaintiffs, | |
| v. | **REPORT & RECOMMENDATION** |
| BCBSM, Inc. d/b/a Blue Cross Blue Shield of Minnesota, | |
| Defendant. | |

Damon L. Ward, **Ward Law Group**, 301 Fourth Avenue South, Suite 378N, Minneapolis, MN 55415 (for Plaintiffs); and

Kathy S. Kimmel and Marie L. Van Uitert, **Oppenheimer Wolff & Donnelly LLP**, 222 South Ninth Street, Suite 2000, Minneapolis, MN 55402 (for Defendant).

## I.    INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Defendant Blue Cross Blue Shield of Minnesota's ("BCBSM") Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 10). This Motion has been referred to the undersigned for a Report and Recommendation to the District Court, the Honorable Michael J. Davis, United States District Court Chief Judge for the District of Minnesota, under 28 U.S.C. § 636 and D. Minn. LR 72.1.

Based upon the record, memoranda, and oral arguments of counsel, the Court will recommend that Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 10) be granted in part and denied in part.

## II.     BACKGROUND

Plaintiffs Raleigh Spizman ("Mrs. Spizman") and Robert Spizman ("Mr. Spizman") brought their First Amended Complaint seeking damages and other equitable relief against BCBSM for declaratory judgment, claim for benefits, breach of fiduciary duty, claim for penalty, and estoppel. *See* First Amended Complaint ("FAC"), ¶¶ 60–102, ECF No. 9.

### A.     Chronology of Events

On November 18, 2012, Mrs. Spizman was hospitalized and intubated on a ventilator at Methodist Hospital after suffering from respiratory distress or failure. *Id.* at ¶¶ 14–17. Doctors diagnosed Mrs. Spizman's ailment as acute aspiration pneumonia. *Id.* at ¶ 18. On December 6, 2012, Mrs. Spizman was transferred to Regency Hospital to participate in its ventilator weaning program. *Id.* at ¶ 23. Mr. and Mrs. Spizman communicated to the staff at Regency Hospital that they wanted to use a home health care agency for Mrs. Spizman's care at home. *Id.* at ¶ 26.

In December 2012, Mr. Spizman spoke to Gary Dennison, a BCBSM insurance agent, to discuss renewing Plaintiffs' insurance and ask if there were any changes in the policy. *Id.* at ¶¶ 27–28. Mr. Dennison responded that the policy renewal process would be the same and confirmed—in two separate conversations—that the new policy would cover Mrs. Spizman's extended and significant home health care needs. *Id.* at ¶¶ 29, 32–

2

33. In January or February 2013, Roxanne, a BCBSM claim representative, also informed Mr. Spizman that there would be coverage and benefits for Mrs. Spizman. *Id.* at ¶ 34.

Mrs. Spizman returned home and began receiving home health care services on or about February 14, 2013. *Id.* at ¶ 43 (typographical error stating "2014"). Plaintiffs developed a home health care plan for Mrs. Spizman that included a home health care provider and multiple personal care assistants providing round-the-clock twenty-four hour care. *Id.* at ¶ 44. Despite Mr. Dennison and Roxanne's comments, BCBSM informed Plaintiffs that coverage and benefits were being denied. *Id.* at ¶ 35. Before filing this action, Plaintiffs used internal appeal mechanisms within BCBSM regarding the denial of coverage. *Id.* at ¶¶ 45–46.

Plaintiffs allege that BCBSM has sought to control the appeals process fraudulently by approving some of Plaintiffs' claims for twenty-four hour care, denying others, and leaving some claims "in process" in an attempt to prevent an external appeal from MAXIMUS, the state approved agency administering external appeals. *Id.* at ¶¶ 47–49. Plaintiffs' First Amendment Complaint states:

> BCBSM contacted MAXIMUS and misrepresented to the appeal personnel that Plaintiffs, by and through their representatives, failed to make a mandatory corporate appeal (the appeal is optional and was nevertheless made) to have the appeal dismissed and that after the dismissal and refiling of Plaintiff's corporate appeal placed/noted in BCBSM's own computer and stated explicitly to Plaintiffs' home health care provider that it was approving some claims, placing "in process" (without explanation) other claims, and wrongly (claiming the submissions were late) denying other claims to prevent Plaintiff from being able to appeal to MAXIMUS again.

*Id.* at ¶ 50. Plaintiffs' First Amended Complaint further states that BCBSM has refused to provide requested information and documentation regarding the policy and computer notes for their appeal. *Id.* at ¶¶ 51–52.

**B.      The Plan**

Plaintiffs are covered under a group health plan ("the Plan") issued by BCBSM and sponsored by Mr. Spizman's employer, Metro Produce Distributors, Inc. ("Metro"). *Id.* at ¶¶ 5, 7. Under the Plan, Metro is the Plan Administrator and BCBSM is the Claims Administrator. *See* FAC Ex. A at 85; Kimmel Aff. Ex. 1 at 2, 6, ECF No. 13.  The Plan was renewed and new documentation was provided to the insured each year relevant to this matter. Metro's contract with BCBSM consists of two types of documents relevant to this dispute: (1) the Group Health Care Contract; and (2) the Certificate of Coverage ("Certificate") that is incorporated by reference into the Group Contract. *See* Kimmel Aff. Ex. 1 (Metro's 2012 Group Contract); *id.* at Ex. 2 (a sample 2012 Certificate, which parties have agreed covers the 2012 policy term); *id.* at Ex. 3 (Metro's 2013 Group Contract); FAC Ex. A (Metro's 2013 Certificate). Each year BCBSM issued Metro a new Certificate, which replaced all prior Certificates. *See* FAC Ex. A at 1.

Metro's 2012 Certificate provided some coverage for skilled in-home nursing care. Specifically, the Plan's benefit chart indicates coverage for nursing care ordered by a physician, but excludes coverage for "[s]ervices for or related to private-duty nursing, except as required by Minnesota Law."[1] Kimmel Aff. Ex 2 at 28 (covered items); *id.* at 50, ¶ 40 (exclusions). The 2012 Certificate also provides that "[a]ll changes to the group

---

[1] There is no allegation that the services at issue are required by Minnesota law.

contract must be approved by one (1) of our executive officers and attached to the group contract with the group contractholder," and "[n]o agent can legally change the group contract or waive any of its terms." *Id.* at 78.

Like the 2012 Certificate, the 2013 Certificate excluded coverage for skilled nursing care in certain situations. FAC Ex. A at 30. Specifically, the 2013 Certificate excluded "services for or related to extended hours skilled nursing care, also referred to as private-duty nursing care." *Id.* at 30, 51–52. The 2013 Certificate defines "extended hours skilled nursing care" as follows:

> Extended hours skilled nursing care, also referred to as private-duty nursing care, are complex nursing care services provided in a member's home.
>
> Extended hours skilled nursing care services provide complex, direct, skilled nursing care to develop caregiver competencies through training and education to optimize the member's health status and outcomes. The frequency of the nursing tasks is continuous and temporary in nature and is not intended to be provided on a permanent, ongoing basis.

*Id.* at 87. "Intermittent skilled nursing care" is defined as "a visit by a registered nurse or licensed practical nurse of up to four (4) consecutive hours in duration." *Id.* at 89. Although both Certificates excluded private-duty nursing and provided for some in-home care, only the 2013 version provided definitions for "extended hours skilled nursing care" and "intermittent skilled nursing care."

C.      **Plaintiffs' Claims**

Plaintiffs assert six causes of action.[2] In Count I, Plaintiffs seek a declaration that BCBSM had an affirmative duty to notify Plaintiffs in writing of a substantial reduction in coverage from 2012 to 2013; that BCBSM's failure so to notify rendered the 2013 reduction in coverage void; and therefore, the 2012 Certificate provides coverage for Mrs. Spizman's home health care needs. FAC at ¶¶ 62–68.

With Count II, Plaintiffs seek declaratory judgment that the 2013 Certificate provides coverage for Mrs. Spizman's home health care needs and requirements. *Id.* at ¶¶ 69–73.

Count III is a claim for benefits under ERISA. *Id.* at ¶¶ 75–78. Plaintiffs allege that BCBSM "has failed to provide, and continues to fail to provide, the benefits due to Plaintiff under the terms of the basic group term life insurance plan, namely, the payment of home health care insurance benefits." *Id.* at ¶ 76. With Count III, Plaintiffs seek to enforce their rights to benefits under the terms of the Policy and Plan. *Id.* at ¶ 77. BCBSM does not seek dismissal of Count III.

With Count IV, Plaintiffs allege that BCBSM breached its fiduciary duty "[b]y failing and refusing to pay benefits to Plaintiffs and engaging in deceptive and fraudulent conduct." Plaintiffs argue that this entitles them "to relief under ERISA . . . including the payment of benefits, along with interest on such benefits and attorneys' fees and separate monetary compensation resulting from [Defendant's] breach of fiduciary duties." *Id.* at

---

[2] The First Amended Complaint includes a seventh count labeled "Standard of Review." Plaintiffs' counsel has confirmed that labeling this section as a separate count was a typographical error.

6

¶ 88. Plaintiffs also seek other equitable relief, including future home health care coverage, as a "restitutionary monetary reward in the form of a constructive trust," and judicial reformation of the Plan. *Id.* at ¶¶ 89, 90.

With Count V, Plaintiffs seek a $110-per-day penalty for BCBSM's "failure to provide relevant materials for Plaintiffs' appeal." *Id.* at ¶ 92.

With Count VI, Plaintiffs seek equitable relief in the form of enforcement of the reformed plan and separate monetary compensation, asserting that statements made by Mr. Dennison, BCBSM's agent, and Roxanne, BCBSM's claim representative, estop BCBSM from denying benefits to Plaintiffs. *Id.* at ¶¶ 96, 101–102.

## III.   ANALYSIS

### A.   Standard of Review

When considering a motion to dismiss brought under Rule 12(b)(6), a court must accept the facts alleged in the complaint as true to determine if the complaint states "a claim to relief that is plausible on its face." *Magee v. Trs. of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

7

### B.      Count I Fails to State a Claim

Plaintiffs seek a declaration that BCBSM had an affirmative duty to notify Plaintiffs in writing of a substantial reduction in coverage from 2012 to 2013; that BCBSM's failure so to notify rendered the 2013 reduction in coverage void; and therefore, the 2012 Certificate provides coverage for Mrs. Spizman's home health care needs.

Plaintiffs allege a substantial reduction in coverage occurred when BCBSM defined certain terms in the 2013 Certificate that were not defined in the 2012 Certificate. Plaintiffs argue that the absence of any definition of "private-duty nursing" means the term is ambiguous, and therefore it cannot apply to Plaintiffs' policy as BCBSM has interpreted it. BCBSM has interpreted Mrs. Spizman's 24/7 in-home care to be excluded from coverage under the definitions and criteria presented in the 2013 Certificate.

The 2012 Certificate's benefit chart states that "services for or related to private-duty nursing" are "NOT COVERED," and the Certificate's General Exclusions state "[t]he Plan does not pay for . . . [services] for or related to private-duty nursing." The 2012 certificate, however, fails to define "private-duty nursing." The 2013 Certificate also excludes coverage for "services for or related to extended hours skilled nursing care." Unlike the 2012 Certificate, the 2013 Certificate goes on to define "extended hours skilled nursing care" as follows:

> Extended hours skilled nursing care, also referred to as private-duty nursing care, are complex nursing care services provided in a member's home.

> Extended hours skilled nursing care services provide complex, direct, skilled nursing care to develop caregiver competencies through training and education to optimize the member's health status and outcomes. The frequency of the nursing tasks is continuous and temporary in nature and is not intended to be provided on a permanent, ongoing basis.

FAC Ex. A at 87. The 2013 Certificate defines "intermittent skilled nursing care" as "a visit by a registered nurse or licensed practical nurse of up to four (4) consecutive hours in duration." *Id.* at 89.

In interpreting the meaning of the term "private-duty nursing" as it is used in the 2012 Certificate, the Court may look to published definitions to aid its interpretation. *Khoury v. Group Health Plan, Inc.*, 615 F.3d 946, 955 (8th Cir. 2010); *see also Cent. States, Se. and Sw. Areas Pension Fund v. Ind. Fruit and Produce Co.*, 919 F.2d 1343, 1350 (8th Cir. 1990) ("Recourse to the ordinary, dictionary definition of words is not only reasonable, but may be necessary." (citing *Conoco v. Nw. Bank*, 767 F.2d 470 471 (8th Cir. 1985))). Merriam-Webster defines "private-duty" as "caring for a single patient either in the home or in a hospital." Merriam-Webster, http://www.merriam-webster.com/medical/private%20duty (last visited June 1, 2015). The application of this ordinary, dictionary definition would exclude Mrs. Spizman's 24/7 in-home nursing care under the 2012 Certificate's relevant benefit chart and general exclusions.

BCBSM's interpretation of "private-duty nursing," which is consonant with the term's commonly understood meaning and dictionary definition, mirrors the 2013 Certificate's added definition for this term. Based on the similarities between the 2013 Certificate's definition and the ordinary, dictionary definition referenced above, this

Court determines that the term "private-duty nursing" is unambiguous. Moreover, in light of the similarity between BCBSM's interpretation and the ordinary, dictionary definition of "private-duty nursing," the Court concludes that the 2013 Certificate did not create a substantial reduction in coverage from 2012 to 2013. As such, BCBSM had no affirmative duty to notify Plaintiffs of a substantial reduction in coverage because no substantial reduction occurred. Therefore, BCBSM did not breach an affirmative duty, and Plaintiffs' first count—that the Court must void the 2013 Plan and enforce the 2012 Plan—fails to state a claim for which relief can be granted. Based upon the record, memoranda, and oral arguments of counsel, the Court recommends that Defendant's Motion be granted with regard to Plaintiffs' first claim.

### C.    Count II

Count II seeks a declaratory judgment that the 2013 Certificate provides coverage for Mrs. Spizman's in-home nursing care. BCBSM argues that its interpretation of "intermittent skilled nursing care" and "extended hours skilled nursing care" does not abuse its discretionary authority to determine Mrs. Spizman's benefit eligibility.

The Plan grants BCBSM discretionary authority to determine eligibility for benefits and to construe the Plan's terms. FAC Ex. A at 75; *see also* Kimmel Aff. Ex. 3 at 7 ("We have discretionary authority to determine employee eligibility for benefits and to construe the provisions of the group certificate(s) and this contract."). Therefore, this Court must analyze BCBSM's interpretation under the abuse of discretion standard. *See Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Tussey v. ABB, Inc.*,

746 F.3d 327, 333 (8th Cir. 2014). The Court's abuse of discretion analysis regarding

BCBSM's interpretation involves several factors ("*Finley* factors"):

> These include "whether their interpretation is consistent with the goals of the Plan, whether their interpretation renders any language of the Plan meaningless or internally inconsistent, whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, whether they have interpreted the words at issue consistently, and whether their interpretation is contrary to the clear language of the Plan."

*King v. Hartford Life & Acc. Ins. Co.*, 414 F.3d 994, 999 (8th Cir. 2005) (quoting *Finley*

*v. Special Agents Mut. Benefit Assoc., Inc.*, 957 F.2d 617, 621 (8th Cir.1992)). In

addition, BCBSM is responsible for both determining the scope of coverage and paying

benefits under the Plan. In light of these dual roles, the Court gives some weight to this

conflict of interest in determining whether BCBSM abused its discretion. *See Metro. Life*

*Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008); *Gordon v. Nw. Airlines, Inc. Long-Term*

*Disability Income Plan*, 606 F. Supp. 2d. 1017, 1035 (D. Minn. 2009) (citing *Glenn*, 554

U.S. at 115).

The 2013 Certificate states that the Plan provides coverage for "intermittent

skilled nursing care in your home . . . ." The 2013 Certificate defines "intermittent skilled

nursing care" as a "visit by a registered nurse or licensed practical nurse of up to four (4)

consecutive hours in duration." The 2013 Certificate excludes coverage for "services for

or related to extended hours skilled nursing care, also referred to as private-duty nursing

care." The 2013 Certificate characterizes "extended hours skilled nursing care" as

"continuous and temporary in nature."

**1.    BCBSM's Interpretation Is Consistent With the Goals of the Plan**

The first *Finley* factor addresses whether BCBSM's interpretation is consistent with the goals of the Plan. "[T]he goal of any plan is to provide coverage consistent with its terms." *Darvell v. Life Ins. Co. of N. Am.*, No. 07-cv-2113, 2008 WL 5120993, at *11 (D. Minn. 2008). The terms of the Plan are set forth in the 2013 Certificate. BCBSM's interpretation of the terms "intermittent skilled nursing care" and "extended hours skilled nursing care" is consistent with the terms and the definitions in the 2013 Certificate. Accordingly, the Court concludes that BCBSM's interpretation is consistent with the goals of the Plan.

**2.    BCBSM's Interpretation Does Not Render Any Language of the Plan Meaningless or Internally Inconsistent**

The second *Finley* factor addresses whether BCBSM's interpretation renders any language of the Plan meaningless or internally inconsistent. Plaintiffs posit that the Plan's failure to limit the amount of intermittent skilled nursing visits per day creates ambiguity. BCBSM contends that its interpretation is not an abuse of discretion, and Plaintiffs' argument incorrectly renders other Plan language meaningless.

Plaintiffs emphasize the Plan's language and limitations relating to intermittent skilled nursing care. Plaintiffs argue that because the Plan's definition does not expressly limit the amount of intermittent skilled nursing visits per day, this entitles them to coverage for multiple 4-hour visits per day. This interpretation of the Plan's terms, however, would render meaningless other important policy language. *See, e.g.*, *King*, 414 F.3d at 1004 (citing *Finley*, 957 F.2d at 621). The Plan provides coverage for

12

"intermittent skilled nursing care," which it defines as "a visit by a registered nurse or licensed practical nurse of up to four (4) consecutive hours in duration." The Plan then *excludes* coverage for "extended hours skilled nursing care," which it defines as "continuous" in nature. Plaintiffs' interpretation of the 2013 Certificate, which would allow endless cycles of 4-hour visits throughout the day, inherently renders meaningless the Plan's exclusion of coverage for "extended hours skilled nursing care." If the Plan's coverage for "intermittent skilled nursing care" provided coverage for endless serial nursing services throughout the day, then the Plan's exclusion of coverage for "continuous" skilled nursing care would be meaningless. Plaintiffs' interpretation would render the "extended hours skilled nursing care" exclusion meaningless. BCBSM's interpretation of the terms, however, does not render any other Plan language meaningless or internally inconsistent.

### 3.    BCBSM's Interpretation Does Not Conflict With ERISA's Substantive or Procedural Requirements

The third *Finley* factor is whether BCBSM's interpretation conflicts with ERISA's substantive or procedural requirements. Plaintiffs do not argue that BCBSM's interpretation of the 2013 Certificate conflicts with ERISA's substantive or procedural requirements, and accordingly, the Court determines that no such conflict exists.

### 4.    BCBSM Has Interpreted the Words At Issue Consistently

The fourth *Finley* factor is whether BCBSM has interpreted the words at issue consistently. Plaintiffs do not argue that BCBSM has inconsistently interpreted the words

at issue within the 2013 Certificate. Accordingly, the Court determines that BCBSM has consistently interpreted the words at issue in Count II.

### 5. BCBSM's Interpretation Is Not Contrary To the Clear Language of the Plan

The fifth *Finley* factor addresses whether BCBSM's interpretation is contrary to the clear language of the Plan. The 2013 Certificate provides that "intermittent skilled nursing care" is covered under the Plan, which it defines as "a visit by a registered nurse or licensed practical nurse of up to four (4) consecutive hours in duration." The 2013 Certificate excludes "extended hours skilled nursing care," which is characterized as "continuous" in nature. BCBSM's interpretation of the Plan's terms characterized Mrs. Spizman's 24/7 in-home care qualifies as "extended hours skilled nursing care." For the same reasons as set forth in this Court's analysis of the Plan's terms in Count II, the Court determines that BCBSM's interpretation is not contrary to the clear language of the Plan.

In summary, BCBSM's interpretation (1) is consistent with the Plan's goal of providing coverage consistent with its terms; (2) construes the Plan as a whole and does not render other Plan language meaningless or internally inconsistent; (3) does not conflict with ERISA; (4) is not inconsistent with other interpretations of the same words; and (5) is not contrary to the clear language of the plan. The Court's *Finley* analysis supports BCBSM's interpretation, even when balanced against BCBSM's inherent conflict of interest. Therefore, based upon the record, memoranda, and oral arguments of

counsel, the Court concludes that BCBSM's interpretation of the Plan's terms is not an abuse of its discretion and recommends Count II be dismissed.

### D.     Count IV

Count IV alleges that BCBSM breached its fiduciary duties to Plaintiffs "[b]y failing and refusing to pay benefits to Plaintiffs and engaging in deceptive and fraudulent conduct." Plaintiffs argue that this entitles them to "the payment of benefits, along with interest on such benefits and attorneys' fees and separate monetary compensation resulting from [Defendant's] breach of fiduciary duties." Plaintiffs also seek other equitable relief, including future home health care coverage, as a "restitutionary monetary reward in the form of a constructive trust," as well as reformation of the Plan and enforcement of the Plan as reformed. BCBSM argues that Count IV must be dismissed because Plaintiffs seek recovery of ERISA Plan benefits in Count III, and ERISA does not allow Plaintiffs to obtain Plan benefits via equitable relief when Congress has expressly provided adequate relief elsewhere in ERISA. (Mem. in Supp. at 20-21.)

The Supreme Court has stated that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case [equitable] relief normally would not be 'appropriate.'" *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996) (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144 (1985)); *see also Pilger v. Sweeney*, 725 F.3d 922, 927 (8th Cir. 2013) ("Plaintiffs' ability to seek [benefits] relief in their § 1132(a)(1)(B) claim forecloses them from also pursuing it in this § 1132(a)(3)(B) [equitable relief] claim." (citing *Varity*, 516 U.S. at 515)).

The Eighth Circuit recently clarified its interpretation of *Varity*'s application in *Silva v. Metropolitan Life Insurance Co.*, 762 F.3d 711 (8th Cir. 2014). In that case, the district court denied Silva's attempt to amend his complaint to include a claim under § 1132(a)(3) on grounds that "bringing a claim for equitable relief based on the breach of fiduciary duties was futile where the relief sought was compensation for the benefits that would have been paid but for the defendants' errors." *Id.* at 720 (internal quotation marks omitted). The Eighth Circuit reversed, determined that Silva's motion could not be denied as futile, and examined the separate question of whether it could be denied on the basis of redundancy. *Id.* at 725-27.

In examining the redundancy question, the Eighth Circuit considered the U.S. Supreme Court case *Varity* and *Pilger*, the most recent instance in which the Eighth Circuit had considered *Varity*. *Id.* at 725-26.

> We do not read *Varity* or *Pilger* to stand for the proposition that [a plaintiff] may only plead one cause of action to seek recovery of his son's supplemental life insurance benefits. Rather, we conclude those cases prohibit duplicate *recoveries* when a more specific section of the statute, such as § 1132(a)(1)(B), provides a remedy similar to what the plaintiff seeks under the equitable catchall provision, § 1132(a)(3).
> . . .
> Silva presents two alternative—as opposed to duplicative—theories of liability and is allowed to plead both. Fed. R. Civ. P. 8(a)(3) ("A pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief."); Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."); *see also* Fed. R. Civ. P. 18 ("A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has

> against an opposing party."). The plaintiff is simply not allowed to recover twice.

*Id.* at 726-27 (8th Cir. 2014).

The same reasoning applies in this case. At this early stage, Plaintiffs are not precluded from pleading both Counts III and IV. Plaintiffs have pleaded Count IV as an alternative to Count III in a manner that makes their entitlement to relief plausible. With Count III, Plaintiffs seek payment of benefits owed under the Plan under § 1132(a)(1)(B). Count IV addresses conduct distinguishable from Count III and seeks accepted equitable remedies outside the scope of a § 1132(a)(1)(B) claim. A degree of overlap does not imply that Counts III and IV are inherently duplicative. *See Silva*, 762 F.3d at 727 ("At the motion to dismiss stage . . . it is difficult for a court to discern the intricacies of the plaintiff's claims to determine if the claims are indeed duplicative, rather than alternative, and determine if one or both could provide adequate relief.") (citations omitted).

BCBSM relies on *Pilger* to argue that dismissal of Count IV is appropriate because it is simply a repackaging of Count III, and any possible relief would be available under § 1132(a)(1)(B). Plaintiffs' First Amended Complaint, however, alleges that BCBSM's conduct was not limited to a simple decision to deny coverage and benefits. Plaintiffs allege that BCBSM breached its fiduciary duty by engaging in misleading claims determinations so as to prevent external appeals and not exercising good faith in the internal review process. Moreover, Plaintiffs do not allege that the terms of the Plan entitle them to the relief sought in Count IV. Although Count IV as pleaded is close to the line, the Court determines that the equitable relief Plaintiffs request in Count

IV is separate and distinct from what would be unavailable in an action solely under § 1132(a)(1)(B).

The Court also notes that the instant dispute is still at the motion to dismiss stage, whereas *Pilger* was on appeal from a motion for summary judgment. "This is important because claims are more developed by the time a motion for summary judgment is filed." *Silva*, 762 F.3d at 727 (making the same distinction between *Silva* and *Pilger*). Without a more developed record, "it is difficult to determine if relief is indeed owed under § 1132(a)(1)(B), and requiring the plaintiff to pursue that path may foreclose the plaintiff from bringing a better case pursuant to § 1132(a)(3)." *Id.* Accordingly, based upon the record, memoranda, and oral arguments of counsel, the Court recommends that Defendant's Motion be denied with regard to Count IV.

## E.    Count V

Count V seeks a $110 per day penalty for BCBSM's "failure to provide relevant materials for Plaintiffs' appeal." Plaintiffs assert the requested documents are among those that ERISA requires administrators to provide upon request. BCBSM argues that Count V fails to state a claim because the requested documents were not required to be furnished under ERISA.

Under ERISA, "[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established and operated." 29 U.S.C. § 1024(b)(4). ERISA also establishes:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1)(B).

Plaintiffs assert that they have requested "information and documentation regarding the policy and computer notes for their appeal," and that BCBSM has refused to provide such information. These computer notes are not expressly listed in ERISA. Therefore, for a failure to comply with these requests to constitute a valid claim, the requested BCBSM computer notes must fit within the purview of "other instruments" required under § 1024(b)(4).

The Eighth Circuit has established that "other instruments," within the context of § 1024(b)(4), encompasses "only formal documents that establish or govern the plan." *Brown v. Am. Life Holdings, Inc.*, 190 F.3d 856, 861 (8th Cir. 1999) (citations omitted); *see also Brown v. J.B. Hunt Transp. Servs. Inc.*, 586 F.3d 1079, 1088–89 (8th Cir. 2009) (holding that claims manuals do not fall within the scope of "other instruments"). As the FAC is pleaded, the requested computer notes are not formal documents, nor do these notes establish or govern the Plan. Consequently, ERISA does not require BCBSM to produce the requested computer notes. Therefore, based upon the record, memoranda, and oral arguments of counsel, the Court will recommend that Count V be dismissed.

F.      Count VI

With Count VI , Plaintiffs seek equitable relief in the form of enforcement of the reformed plan and separate monetary compensation, asserting that statements made by Mr. Dennison, BCBSM's agent, and Roxanne, BCBSM's claim representative, estop BCBSM from denying benefits to Plaintiffs. These statements, made by individuals associated with BCBSM, indicated the Plan would cover Mrs. Spizman's home health care needs.

"The principle of estoppel declares that a party who makes a representation that misleads another person, who then reasonably relies on that representation to his detriment, may not deny that representation." *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 659 (8th Cir. 1992). "Courts may apply the doctrine of estoppel in ERISA cases only to interpret ambiguous plan terms . . . ." *Fink v. Union Cent. Life Ins. Co.*, 94 F.3d 489, 492 (8th Cir. 1996). "Common-law estoppel principles cannot be used to obtain benefits that are not payable under the terms of the ERISA plan." *Id.* Moreover, a plaintiff "may not use an estoppel theory to modify the unambiguous terms of an ERISA plan." *Neumann v. AT&T Commc'ns*, 376 F.3d 773, 784 (8th Cir. 2004).

Mr. Dennison, a BCBSM agent, and Roxanne, a BCBSM representative, verbally conveyed that Plaintiffs' BCBSM policy would cover Mrs. Spizman's extended and significant home health care needs. The First Amended Complaint alleges "Plaintiffs' reliance on the representations of Defendant's [agent and representative] resulted in injury to Plaintiffs" and that "coverage terms of the Policy at issue in this litigation are ambiguous." However, estoppel analysis with regard to ERISA is confined to interpreting

ambiguous plan terms. *See Kendall v. Int'l Ass'n of Bridge, Structural, and Ornamental Iron Workers Local 793 Pension Plan*, No. 10-cv-3140, 2011 WL 1363996, at *10 (D. Minn. Apr. 11, 2011) (citing *Fink*, 94 F.3d at 492). A plaintiff may not use an estoppel theory to enlarge benefits under a written plan. *See Slice v. Sons of Norway*, 34 F.3d 630, 634–35 (8th Cir. 1994). This Court has determined that the Plan's language is unambiguous. The Plan documents set forth with particularity the types of services that are covered by the Plan and expressly exclude "extended hours skilled nursing care." Consequently, Plaintiffs' attempt to apply an estoppel argument to an unambiguous ERISA plan must fail. *See, e.g.*, *Fink v. Union Cent. Life Ins. Co.*, 94 F.3d 489, 492 (8th Cir. 1996). Therefore, based upon the record, memoranda, and oral arguments of counsel, the Court recommends that Defendant's Motion be granted with regard to Count VI.

## IV.   RECOMMENDATION

Based upon the file, record, memoranda, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 10) be **GRANTED** with regard to Counts I, II, V, and VI, and **DENIED** as to all other counts.

Date: June 4, 2015

s/ Tony N. Leung
Tony N. Leung
United States Magistrate Judge
for the District of Minnesota

*Spizman et al. v. BCBSM Inc.*
File No. 14-cv-3568 (MJD/TNL)

21

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and by serving upon all parties written objections that specifically identify the portions of the Report to which objections are made and the basis of each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before **June 18, 2015**.